**In re CDC CORPORATION, Debtor.**

No. 11–79079.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 28, 2012.

Christopher D. Phillips, G. Frank Nason, IV, Gregory D. Ellis, James C. Cifelli, William D. Matthews, Lamberth, Cifelli, Stokes, Ellis & Nason, Atlanta, GA, for Debtor.

Jesse H. Austin, III, Paul, Hastings, Janofsky & Walker LLP, Atlanta, GA, for Joint Special Committee of CDC Corporation and CDC Software Corporation.

Timothy T. Brock, Aaron M. Zeisler, Satterlee Stephens Burke & Burke LLP, New York, NY, James S. Rankin, Jr., Parker, Hudson, Rainer & Dobbs LLP, Atlanta, GA, for E1 Fund Ltd., Evolution CDC SPV Ltd., Evolution Master Fund Ltd., and Segregated Portfolio M.

David W. Cranshaw, Morris, Manning & Martin, LLP, Atlanta, GA, Nicole L. Greenblatt, Kirkland & Ellis LLP, New York, NY, for Archipelago Holdings.

J. David Dantzler, Jr., Jeffrey W. Kelley, Stephen S. Roach, Troutman Sanders, LLP, Atlanta, GA, for The Official Committee of Equity Security Holders of CDC Corp.

Alan E. Gamza, Moses & Singer, LLP, New York, NY, Anna Mari Humnicky, Gus H. Small, Cohen Pollock Merlin & Small, Atlanta, GA, for Robeco Investment Management, Inc.

David A. Geiger, Geiger Law, LLC, Atlanta, GA, Bojan Guzina, Sidley Austin LLP, Chicago, IL, for ChinaRock Capital Management Ltd.

Daniel P. Goldberg, Richard J. Holwell, Avi B. Israeli, Michael S. Shuster, Holwell Shuster & Goldberg LLP, New York, NY, for Peter Yip.

David S. Weidenbaum, James H. Morawetz, Office of the U.S. Trustee, Atlanta, GA.

### ORDER ON APPLICATION FOR COMPENSATION OF MORGAN JOSEPH TRIARTISAN, LLC

PAUL W. BONAPFEL, Bankruptcy Judge.

The Official Committee of Equity Security Holders of CDC Corporation, the Chapter 11 debtor in this case, filed an application to retain Morgan Joseph TriArtisan, LLC as its financial advisor and investment banker. [Docket No. 109]. Under paragraph 2 of the engagement letter that the Court approved pursuant to 11 U.S.C. § 328(a), the Committee agreed that Morgan Joseph's compensation would include a "Completion Fee" in the event of a "Shareholder Recovery." [Docket No. 144].[1] The Completion Fee is one percent of the first $100 million of the Shareholder Recovery, three percent of amounts in excess of $100 million and less than $200 million, and five percent of amounts over $200 million.

On September 6, 2012, the Court confirmed a Chapter 11 plan [Docket No. 542] that provides for the liquidation of the debtor's assets, the payment of all claims and administrative expenses, and distribution of remaining proceeds to shareholders through the "CDC Liquidation Trust" that the plan establishes. [Docket No. 551]. As a result of the liquidation of assets to date, shareholders currently are collectively receiving a distribution of almost $121 million. They will receive further distributions upon the liquidation of remaining assets and upon the resolution of disputed claims to the extent that the amounts allowed are less than the reserves set aside to pay them.

It is undisputed, therefore, that a Shareholder Recovery has occurred and that Morgan Joseph is entitled to a Completion Fee. The Debtor and the Committee, however, disagree with Morgan Joseph over how to determine the "Shareholder Recovery" on which the Completion Fee is based.

Morgan Joseph in its application for final compensation contends that the Shareholder Recovery is determined by reference to the average trading price of the

---

1. After the Committee filed its application to retain Morgan Joseph, several parties objected to the terms of the engagement. [Docket Nos. 132, 137, and 138]. At a hearing held on January 24, 2012, the parties announced that the objections had been resolved through revision of the engagement letter with regard to the Completion Fee. Transcript of Jan. 24, 2012 hearing at 18–22 (copy attached as Exhibit "B" to Morgan Joseph's Reply in Support of its Application [Docket No. 666 at 20, 38–42] ). A copy of the Order [Docket No. 144] is attached as Exhibit "A" to Morgan Joseph's Application for Compensation [Docket No. 615 at 18], and a copy of the revised engagement letter is attached to the Order [Docket No. 144 at 8–18, copy at Docket No. 615 at 18, 25–35].

Debtor's publicly trading shares in the five days preceding confirmation of the plan. (Morgan Joseph Application ¶¶ 25–30 [Docket No. 615] at 10–12). Based on an average trading price of $ 4.922 during this period and 39,004,624 outstanding shares, Morgan Joseph calculates the Shareholder Recovery as $191,980,759.30. *(Id.* at ¶ 27). This results in a Completion Fee of $ 3,759,423.[2]

The Debtor and the Committee contend that the Shareholder Recovery should be determined by reference to distributions actually made to shareholders under the plan through the CDC Liquidation Trust. (Debtor Objection ¶ 15 [Docket No. 664] at 4; Committee Objection ¶ 7 [Docket No. 665] at 4). Accordingly, they conclude that the Completion Fee currently due is $ 1,623,723.52, based on the distributions of $ 120,790,784 that shareholders have so far actually received. The Debtor and the Committee agree that Morgan Joseph will be entitled to additional fees as shareholders receive additional distributions.

The Court has entered a separate order approving payment of the undisputed portion of the Completion Fee, $1,623,723.52. [Docket No. 675].

Because the definition of "Shareholder Recovery" in paragraph 2 of the engagement letter governs resolution of the dispute, the Court quotes it at length [Docket No. 144 at 9–10]:

> For purposes of this Agreement, "Shareholder Recovery" means the total fair market value of all consideration of any type or kind exceeding the amount required to pay (and that is paid or allocated for the purpose of paying) all allowed claims against the Company ... in full and in cash, that is distributed to holders of the Company's Equity

Securities (as defined in 11 U.S.C. § 101(16) (each a "Holder")... . Such consideration shall include, without limitation, cash, notes, securities and other property, payments made in installments, insurance recoveries, and Contingent Payments (as defined below). If any portion of the Shareholder Recovery is payable in the form of securities, the value of such securities for calculating the Completion Fee will be the average closing price for such securities for the five trading days prior to any distribution or allocation.... Any portion of any Completion Fee that is included within amounts that are paid into escrow or reserved subject to subsequent allowance or other Bankruptcy Court Order will be payable upon the establishment of such escrow or reserve. Contingent Payments other than escrowed or reserved amounts will be calculated based on the present value of the reasonably expected maximum amount of such Contingent Payments as determined in good faith by the Committee and Morgan Joseph, utilizing a discount rate equal to the prime rate published in *The Wall Street Journal* on the last business day before any distribution or allocation. If the parties cannot agree, the unpaid portion of any Completion Fee shall be paid to Morgan Joseph in the same proportions and at the same times as the Contingent Payments are paid. "Contingent Payments" shall be defined as the fair market value of any consideration in the form of deferred payments, performance-based payments, "earn-outs", or other payments based on future events.

Morgan Joseph asserts that the provisions of paragraph 2 calling for valuation of securities based on average closing

---

**2.** The calculation is as follows: One percent of the first $ 100 million ($ 1 million) plus three percent of $ 91, 980,759.30 ($ 2,759,-423), for a total of $ 3,759,423.

prices governs determination of the Shareholder Recovery. It formulates its theory in various ways.

Morgan Joseph's original application states, "The mandate of the Plan, while allowing the Debtor's securities to remain tradable until consummation, makes the Debtor's share closing price the best proxy for the amount of the Shareholder Recovery, and hence the amount of the Completion Fee." (Morgan Joseph Application ¶¶ 26 [Docket No. 615] at 11). In its Reply in support of its application, Morgan Joseph asserts, "[T]he Engagement Letter is clear—a Shareholder Recovery is the fair market value of any consideration, of any type whatsoever, above that needed to pay creditors in full." (Morgan Joseph Reply [Docket No. 666] at 4).

In its Supplemental Reply, Morgan Joseph states, "The Completion Fee, by its very terms, is based on the fair market value of consideration received or to be received by stockholders.... The Debtor's stock price prior to the Effective Date was the exact proxy for the fair market value of the Beneficial Interests stockholders received, and thus is the fair market value of the total Shareholder Recovery under the Plan." (Morgan Joseph Supplemental Reply [Docket No. 674] at 2). Later in the Supplemental Reply, Morgan Joseph notes, "[T]he Engagement Letter refers to the fair market value of the consideration that is the Shareholder Recovery, not the actual payouts to stockholders. There was a Shareholder Recovery, which occurred on the Effective Date." (Morgan Joseph Supplemental Reply [Docket No. 674] at 7).

Although Morgan Joseph consistently describes its position as arising from the clear language of the engagement letter, nothing in its language requires or even permits determination of a "Shareholder Recovery" by reference to the average trading prices of the Debtor's shares prior to confirmation in view of the confirmed plan's provisions for distribution of cash to shareholders. Indeed, Morgan Joseph's arguments completely ignore the language that defines Shareholder Recovery by reference to what is *distributed* to shareholders.

Shareholders in this case will receive distributions of cash. This is a simple concept. It does not require complex analysis of the fair market value of cash or a convoluted search for a "proxy" for cash. And the fact that the distribution of cash occurs through the mechanism of a trust does not change the economic substance or value of what shareholders actually recover.

The initial sentence of the definition states that "Shareholder Recovery" means the total fair market value of all consideration that is *distributed* to shareholders. The confirmed plan provides for a *cancellation* of existing shares and for shareholders to receive beneficial interests in the CDC Liquidation Trust, from which they receive cash payments funded from the net proceeds of liquidation of the Debtor's assets. *See* Committee Objection ¶ 7 [Docket No. 665] at 4.

Simply put, shareholders are not receiving a distribution of their existing shares. Rather, they are receiving distributions of cash through the mechanism of a liquidating trust.

Given the way the confirmed plan works, the Shareholder Recovery is properly determined by reference to the cash the shareholders actually receive, *i.e.*, that is *distributed* to them. Because the plan obviously provides for distribution of cash to shareholders, the concept of "fair market value" has nothing to do with their recovery. For the same reason, in view of paragraph 2's reference to consideration

that is *distributed* to shareholders, Morgan Joseph's argument that paragraph 2 does not refer to "actual payouts to stockholders" makes no sense whatsoever.

Even if the definition of Shareholder Recovery requires reference to a distribution of interests in the liquidating trust instead of cash, it does not follow that the proper determinant of the value of such interests in the trust is the preconfirmation average share price of the publicly traded shares. Morgan Joseph's contrary argument again ignores the actual language of the engagement letter.

The engagement letter states, "If any portion of the Shareholder Recovery is payable in the form of securities, the value of such securities for calculating the Completion Fee will be the average closing price for *such securities* for the five trading days prior to any *distribution or allocation*." (Emphasis added). The italicized language limits the use of average closing prices to securities that are distributed or allocated to shareholders.

It is doubtful, for reasons the Debtor has stated,[3] that the interests in the liquidating trust are "securities." But even if they are, the quoted language does not permit the use of average closing prices of the existing publicly traded shares, which the plan cancels, to determine the value of the beneficial interests in the trust, which the shareholders receive.

If the Debtor's confirmed plan had involved the distribution to the Debtor's shareholders of publicly traded securities of another entity or their retention of existing shares, the engagement letter's mechanism for determination of the Shareholder Recovery based on average closing prices of *such securities* would apply. Indeed, the possibility of such a recovery at the time of approval of the retention made such a provision appropriate. But the provision has nothing to do with calculation of the Shareholder Recovery when the distribution to shareholders consists entirely of cash.

The focus of the Committee in this case has been the monetization of the Debtor's assets and distribution of cash to equity. As expressed by the Committee's counsel at the hearing on January 24, 2012, on Morgan Joseph's retention and compensation, which a representative of Morgan Joseph and its counsel attended, the engagement letter "makes it clear that the completion fee, as it's called, that is to be paid to Morgan Joseph is payable only from value distributable to shareholders; that is after administrative expenses and creditors are paid."[4] What shareholders are receiving in this case—the "Shareholder Recovery"—is cash. The Court's interpretation of the engagement letter as set forth above is fully consistent with this understanding of Morgan Joseph's retention and its compensation.

The Court finds nothing unfair about this result. Morgan Joseph undertook its representation and agreed to receive a contingent Completion Fee based on what shareholders receive in the case. Morgan Joseph did not agree to receive a fee based on what the public market in the days prior to confirmation thought the shares

---

**3.** Debtor's Post–Hearing Brief [Docket No. 673] at 6–13.

**4.** Transcript of Hearing, January 24, 2012, at 18–19 (attached as Exhibit "B" to Morgan Joseph Reply [Docket No. 666 at 20, 38–39]). See also *id.* at 19 (Committee counsel stated,

"Again, there must be a return, Your Honor, to shareholders *actually received* for there to be a completion fee under this engagement letter. If there is no value delivered to shareholders there will be no completion fee.") (emphasis added).

were worth. Morgan Joseph is receiving exactly what it bargained for.

Based on, and in accordance with, the foregoing, it is hereby **ORDERED and ADJUDGED** that the Application of Morgan Joseph for payment of a Completion Fee at this time in excess of the amount allowed pursuant to the Court's previous Order be, and the same hereby is **DENIED,** without prejudice to Morgan Joseph's right to receive additional compensation to which it is entitled as a Completion Fee as and when the Debtor's shareholders receive additional cash distributions.

**IT IS ORDERED.**